1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10
BRIAN YOUNGBLOOD and                    Case No. 2:20-cv-06251-MCS-MRW
11 PRISCILLA HERRERA, on behalf of
themselves and all others similarly     **ORDER GRANTING IN PART AND**
12 situated,                            **DENYING DEFENDANT'S MOTION**
                                        **TO DISMISS [21]**
13                    Plaintiffs,
14
15              v.
16
CVS PHARMACY, a Rhode Island
17 Corporation,
18                    Defendant.
19

20     **I. INTRODUCTION**

21          Before the Court is a Motion to Dismiss Plaintiffs' First Amended Class Action

22 Complaint ("Motion") filed by Defendant CVS Pharmacy. (Mot., ECF No. 21.)

23 Plaintiffs Brian Youngblood and Priscilla Herrera filed an Opposition and CVS filed a

24 Reply. (Opp., ECF No. 25; Reply, ECF No. 29.) The Court read and considered the

25 papers filed with the Motion and deemed the matter appropriate for decision without

26 oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing is therefore

27 **VACATED** and removed from the Court's calendar. For the following reasons, the

28 Motion is **GRANTED in part** and **DENIED in part**.

1

## II. FACTUAL BACKGROUND

In December 2013, Youngblood first purchased an acetaminophen product for infants (the "Product") from CVS, a pharmacy with over 9,000 locations in the United States and approximately 1,100 in California. (First Am. Class Action Compl. ("FAC") ¶¶ 1, 11, ECF No. 14.) Youngblood continued purchasing the Product for months after this first purchase. (*Id.* ¶ 40.) In December 2019, Herrera first purchased the Product from a CVS for her son, who is now two years old. (*Id.* ¶¶ 12, 42-43.) Plaintiffs purchased the Product based on its packaging, which led them to believe that it was specifically formulated for infants and therefore different from CVS's acetaminophen product for children (the "Children's Product"). (*Id.* ¶¶ 41, 46.)

The packaging is presented in the FAC as follows:

  

**Product**            **Children's Product**

(*Id.* ¶¶ 28, 30.)

The word "Infants" displayed in distinct yellow font, the photo of a mother and child, and the Product's instruction to "Compare to the active ingredients in Infants' Tylenol Oral Suspension" formed their belief that the Product was specially made for infants. (*Id.* ¶ 28.) A comparison with the Children's product would reinforce Plaintiffs' belief because it displays an image of a parent holding what appears to be an older child and states that it is "For Ages 2 to 11." (*Id.* ¶ 30.) The dosage of the Product and the

2

Children's Product is 160 mg/5 mL. (*Id.* ¶¶ 17-20.) Hence, despite their distinct packaging, the Product and Children's Product contain identical formulations and the only difference is that the Product comes with a syringe while the Children's Product comes with a plastic cup. (*Id.* ¶¶ 21-23, 30.) CVS nevertheless sells the Product for $6.49 per ounce of medicine and the Children's Product for $8.79 per eight ounces of medicine. (*Id.* ¶ 32.)

Based on these allegations, Plaintiffs bring the following claims on behalf of themselves and a nationwide class: (1) violations of Consumer Legal Remedies Act ("CLRA"), Civ. Code §§ 1750, *et seq.*; (2) False Advertising Law ("FAL"), Bus. & Prof. Code §§ 1750, *et seq.*; and the unfair, unlawful and fraudulent business prongs of the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 1720, *et seq.* (*Id.* ¶¶ 74-125.)[1] Plaintiffs define the nationwide class as all "persons who purchased the [Product] for personal use and not for resale in the United States." (*Id.* ¶ 64.)

### III. LEGAL STANDARD

#### A. **Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the

---

[1] The Court disregards allegations in the Motion or Opposition that are not in the FAC or judicially-noticed evidence. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the… opposition… are irrelevant for Rule 12(b)(6) purposes.").

light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Amendment should be granted unless the complaint cannot be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).

There are two instances in which courts may consider information outside of the complaint without converting a Rule 12(b)(6) motion into one for summary judgment: judicial notice and incorporation by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy. Fed. R. Evid. 201. Incorporation by reference allows a court to consider documents which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

**B.  Rule 12(b)(2)**

Under Rule 12(b)(2), a defendant may seek dismissal of an action due to lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

**C.  Rule 9(b)**

Rule 9(b)'s heightened pleading standard applies to Plaintiffs' false advertising claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

## IV.    REQUEST FOR JUDICIAL NOTICE

CVS asks the Court to consider its own version of the labeling on the Product and Children's Product (**Exs. 1-2**); an image of the syringe and dosing cup included in the Product and Children's Product, respectively (**Ex. 3**); (3) court orders from *Elkies v. Johnson & Johnson Servs., Inc.,* Case No. cv-17-7320-GW-(JEMx) (C.D. Cal. 2017) ("*Elkies*") (**Ex. 4-5**); and an excerpt from the U.S. Food & Drug Administration's ("FDA") website (**Ex. 6**). (Request for Judicial ("RJN"), ECF No. 22.) Plaintiffs oppose the RJN as to exhibit 1-3 only. (*See* Pls.' Opp. to RJN, ECF No. 26.)

The Court may consider Exhibit 6, as it is an indisputably authentic excerpt of a government website that is relevant to Plaintiffs' claims. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities…, and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"). The Court may consider *Elkies* as persuasive authority, but it need not take judicial notice of the orders submitted by CVS. The Court declines to take judicial notice of CVS's proffered packaging images, as well as the images of the syringe and dosing cup, because Plaintiffs dispute their authenticity. (*See* Pls.' Opp. to RJN 3-5); *see also, e.g., Marder*, 450 F.3d 448 (considering extraneous document appropriate only when authenticity is not questioned); Fed. R. Evid. 201(a) and (b) advisory committee's notes (noting that a "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition has been one of caution in requiring that the matter be beyond reasonable controversy.")

CVS's RJN is **GRANTED** as to exhibit 6 only and **DENIED** in all other respects.

## V. DISCUSSION

CVS argues that all Plaintiffs' claims fail for the same reasons: (1) Plaintiffs' allegations amount to a non-justiciable complaint about pricing differences; (2) no reasonable consumer would interpret the products' price difference to mean that the products offer different medicine; (3) the packaging discloses that both products contain

identical medicine; and (4) nothing on the packaging misleads customers. CVS further argues that Plaintiffs' prayer for equitable relief should be dismissed because legal remedies are adequate, and that Plaintiffs' class allegations should be dismissed.

**A. Motion to Dismiss All Claims**

To state a claim under the UCL, FAL, or CLRA, Plaintiffs must allege facts showing that the advertisement in question is misleading to a reasonable consumer. *In re: 5 Hour Energy*, No. MDL 13–2438 PSG (PLAx), 2014 WL 5311272, at *23 (C.D. Cal. Sept. 4, 2014) (holding that "reasonable consumer" standard applies to UCL, FAL, and CLRA claims) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). False advertisement laws prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

Citing *Boris v. Walmart Stores, Inc.,* 35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd* 649 Fed. App'x 424 (9th Cir. 2016), CVS spills much ink arguing that the consumer protection laws on which Plaintiffs rely are not vehicles for courts to establish retail prices. (Mot. 1-6; 12-14; Reply 1-5.) While CVS's observation is correct generally, it does not support dismissal of Plaintiffs' claims, which are premised on the distinct allegation that "CVS's packaging creates the misleading and deceptive representation that the [Product] is specially formulated for infants or otherwise possesses some unique medicinal property." (Opp. 7) (citing FAC ¶¶ 4, 41, 46.) Unlike in *Boris*, Plaintiffs here "are not contending that the price is the source of CVS's deception." (*Id.*; *see also* F. App'x at 425 ("The fatal flaw in all of Boris' claims is his assertion that the mere fact of the proximate presentation of the two products with their different colors and prices is sufficient to run afoul of [the UCL, FAL, and CLRA] even though the ingredients and their amounts are listed on the packages.") Plaintiffs instead point to factors beyond price differential that led them to believe that the Product was specially made for infants and therefore different than the Children's Product: (1) the name "Infants' Pain +

Fever"; (2) the instruction to "Compare to active ingredients in Infants' Tylenol Oral Suspension"; and (3) the picture of what appears to be a mother holding a young child relative to the older child featured on the Children's Product. (Opp. 8-9.) On this point, the Hon. George H. Wu's interpretation of virtually identical allegations and packaging is persuasive:

> A picture of mother-and-baby, along with the word 'Infants,' but without any express disclosure that the medicine in the bottle is exactly the same, and provided at the exact same concentration, as Children's, could lead a significant portion of the general consuming public or of parents of infants and children under two years old, to conclude that Infants' is unique or specially formulate for children under two.

*Elkies*, No. 2:17-cv-07320, at 8.

CVS argues that the Product's packaging "is well inside the line drawn by the *Elkies* court" because it "communicates that the medicine is the same as the medicine in the Children's Product, while also communicating that the [Product] contains a dosing syringe in contrast to the dosing cup included in the Children's Product." (Mot. 15.) But comparing each product's packaging in conjunction with the FAC's allegations construed in a light most favorable to Plaintiffs, the Court cannot find as a matter of law that the Product's packaging "communicates that the medicine is the same as the medicine in the Children's Product" such that no reasonable consumer would be deceived. (FAC ¶¶ 27, 30, 52, 55, 107.) While both the Product and Children's Product disclose "ACETAMINOPHEN 160 mg/5 mL," they also feature children of different ages and the Product prominently suggests that it is for "Infants" while instructing consumers to "Compare to the active ingredients in Infants' Tylenol Oral Suspension." (*Id.* ¶¶ 28, 30.) These features cut against CVS's claim that no reasonable consumer would believe that the Product was specially formulated for infants. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 891 (N.D. Cal. 2016) ("Premier cannot run from the fact that it sells *Joint* Juice. The name alone implies that the whole point to drinking the product is to receive joint health benefits.") And CVS can cite no authority to

support that displaying the acetaminophen concentration on each package, or including a syringe in the Product box, forecloses all reasonable inferences that the medicine is specially made for infants. *Elkies*, No. 2:17-cv-07320, at 8 (implying that inclusion of acetaminophen concentration on Infants' Tylenol packaging did not amount to an "express disclosure that the medicine in the bottle is exactly the same, and provided at the same concentration, as Children's.") Even if the Product's packaging contains only true statements, a reasonable juror could nevertheless conclude that it is "has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (citations omitted.) While CVS's contrary interpretation of the Product's packaging is reasonable, it is not grounds for Rule 12 dismissal. *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) ("[T]he Court concludes that whether a reasonable consumer would or would not have been misled by Gerber's label statements is a question of fact not suitable for resolution on a motion to dismiss.") (citing *Williams,* 552 F.3d at 938–39 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss); *Khasin v. Hershey Co.,* No. 12–1862, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion")). This determination is consistent with *Boris*, which left open the possibility that additional factors suggesting consumer confusion stemming from deceptive packaging, like Plaintiffs have alleged here, would "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555; *see also* 649 F. App'x at 525 (stressing that plaintiff had not requested leave to amend and stating that "[w]e express no opinion on whether color or price or both could contribute to a claim under a set of circumstances not before us.")

CVS's theory that all Plaintiffs' claims fail as a matter of law is meritless.

**B. Motion to Dismiss Prayer for Equitable Relief**

It "is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992). Under Plaintiffs' claim for CLRA violations, Plaintiffs "seek restitution and an order enjoining [CVS] from engaging in the methods, acts, and practices alleged herein…" (FAC ¶ 103.) Under Plaintiffs' claim for UCL violations, Plaintiffs "seek an order… enjoining [CVS] from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of the" Product." (*Id.* ¶¶ 118, 124.) Plaintiffs generally pray for restitution and an "order enjoining [CVS] from pursuing the policies, acts, and practices complained of herein." (*Id.* PRAYER FOR RELIEF.)

CVS argues that Plaintiffs have "an adequate remedy at law" and are thus not entitled to equitable relief. (Mot. 21) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA.") (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)).) [2] Plaintiffs argue that *Sonner* and *Mort* are inapposite, and that a plaintiff need not "establish that she has an adequate remedy at law" to avoid dismissal of a prayer for equitable relief at the pleading stage. (Opp. 18-21.)

The Court need not decide whether *Sonner* forecloses Plaintiffs' prayer for equitable relief because that prayer is fatally vague and unaccompanied by any facts to support that legal damages would not make Plaintiffs whole. *Philips v. Ford Motor Co.*, 2015 WL 4111448, *16 (N.D. Cal. July 7, 2015) (noting that a "plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available.") Plaintiffs' Opposition all but admits as much, and requests leave to amend so that Plaintiffs can clarify their alleged entitlement to equitable relief. (Opp. 18, 21) ("Had CVS properly conferred, Plaintiffs could and would have alleged express facts

---

[2] The Court considers this argument despite CVS's failure to raise it during meet and confer, but will not tolerate future deviation from Local Rules. (*See* Opp. 17-18; Reply 10 n. 11.)

to further differentiate the equitable claims from the legal, which could have resolved the issue… Plaintiffs respectfully request leave to amend.") Indeed, the FAC's only clues as to what equitable relief Plaintiffs seek are vague requests for restitution and orders enjoining CVS from unidentified "practices alleged" or "complained of." (FAC ¶¶ 103, 118, 124.) Plaintiffs do not even allege that legal remedies are inadequate, let alone facts to support that contention. (*See generally id.*) Notwithstanding potential application of *Sonner*, these pleading deficiencies independently warrant dismissal so that Plaintiffs can clarify the bases and nature of their equitable prayer. *See, e.g., LaFontaine v. Mitsubishi Motors No. Am., Inc.*, No. SACV 16-00943 JVS (FFMx), 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23, 2017) (dismissing UCL claim without prejudice in part because plaintiff "has not plead that he does not have an adequate remedy at law...").

CVS's Motion is **GRANTED** ***with leave to amend*** to the extent Plaintiffs seek injunctive relief.

### C. Motion to Dismiss Nationwide Class Allegations

CVS moves to dismiss Plaintiffs' nationwide class allegations under Rule 12(b)(2) for lack of personal jurisdiction, standing, and "because there can be no extra-territorial application of California consumer protection statutes to non-residents of California for purchases made outside of California." (Mot. 22.) CVS acknowledges "that Courts generally defer ultimate resolution of these issues until class certification" but raises them "now to preserve" the arguments. (*Id.* 23) (citing *Robinson v. Unilever United States, Inc.*, No. CV 17-3010-DMG (AJWx), 2018 WL 6136139, at *3 (C.D. Cal. June 25, 2018).)

The Court agrees with CVS that resolving its Rule 12(b)(2)-based challenge would be premature.[3] Most of CVS's authority either addresses the class certification

---

[3] CVS does not move to strike under Rule 12(f) and the Court therefore only addresses grounds for dismissal under Rule 12(b)(2).

stage or denies CVS's very arguments at the pleading stage. *Robinson*, 2018 WL 6136139, at *4 ("If and when Plaintiff moves for class certification, then the Court will determine whether dissimilarities between Plaintiff's California law claims and those of non-resident putative class members preclude Plaintiff from asserting the latter in a representative capacity.") (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Melendres v. Arpaio*, 784 F.3d 1254, 1262) (9th Cir. 2015) ("[A]ny issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing") (citations omitted).) CVS's authority pertaining to standing at the pleading stage is inapposite because it addresses situations where named plaintiffs or class members sought recovery in connection with products they did not purchase. (Mot. 23) (citing *Contreras v. Johnson & Johnson Consumer Cos, Inc.*, No. CV 12-7099-GW (SHx), 2012 WL 12096581, at *2 (C.D. Cal. Nov. 29, 2012) ("The case is dismissed except for the product that Plaintiff purchased…"); *Smedt v. Hain Celestial Grp., Inc.*, No. 5:12-CV-03029-EJD, 2014 WL 2466881, at *7 (N.D. Cal. May 30, 2014) ("Plaintiff lacks standing to bring claims as to unpurchased products and the claims[] are dismissed without prejudice."); *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("Plaintiff, therefore, has standing under the UCL and CLRA to pursue his claim regarding Men's Health product and the representations contained on that product; but he lacks standing to pursue any other alleged claim under the UCL or CLRA.").) Here, in contrast, Plaintiffs' nationwide class is defined as all "persons who purchased the [Product] for personal use and not for resale in the United States" and the named Plaintiffs only seek recovery in connection with products they purchased. (FAC ¶ 64; Opp. 23.)

CVS's authority striking nationwide class allegations at the pleading stage due to material differences in relevant state laws does not bind this Court and is nevertheless distinguishable. (Mot. 23-24) (citing *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1125 (C.D. Cal. 2020); *Cadena v. Am. Honda Motor Co.*, No. CV18-

4007-MWF (PJWx), 2019 WL 3059931, at *8 (C.D. Cal. May 29, 2019).) The motions to dismiss in both *Mosqueda* and *Cadena* analyzed, in detail, the "material differences between" the consumer production statutes in the applicable states as applied to the automotive industry, establishing that "each state at issue would be impaired in its ability to protect consumers within its borders if California law were applied to all claims of the nationwide class." 443 F. Supp. 3d at 1126; 2019 WL 3059931, at *8. CVS attempts no such analysis here, and the Court identifies no compelling difference between the law of California and another state that warrants Rule 12 dismissal of all Plaintiffs' nationwide claims. In fact, CVS did not even respond to Plaintiffs' arguments in opposition to CVS's Rule 12(b)(2) challenge, confirming that this challenge was prematurely raised "to preserve it." (Mot. 23; *see also generally* Reply.) CVS's arguments are therefore premature, deficient, and must be rejected.

CVS's Motion under Rule 12(b)(2) is **DENIED**.

## VI.    CONCLUSION

CVS's Motion is **GRANTED** ***with leave to amend*** to the extent Plaintiffs seek injunctive relief and **DENIED** in all other respects. If Plaintiffs choose to file a Second Amended Complaint, they must do so within 10 days of this Order. If Plaintiffs do not so file, CVS must answer Plaintiffs' FAC within 14 days of this Order.

**IT IS SO ORDERED.**

Dated: October 15, 2020          _____

                                          MARK C. SCARSI
                                          UNITED STATES DISTRICT JUDGE